UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>)<br>v.                                                                  )<br>ANDREW MICHAEL CAVANAUGH      )<br>)<br>Defendant.                                            )<br>_____) | No.   21-cr-362 (APM) |

### DEFENDANT'S SENTENCING MEMORANDUM

Andrew Cavanaugh, by his attorney, Maria N. Jacob, hereby submits the following memorandum in aid of sentencing in this matter.

Andrew is a 37 year old United States Veteran of the Marine Corps with no criminal history who is now a husband and father of three children. Despite the government's skewed claims, Andrew does regret his involvement on January 6, 2021. He spoke to the FBI voluntarily without a lawyer present and gave them a detailed account of his actions that day. While inside the Capitol building, Andrew did not have any negative confrontations with police, did not live stream or film what was occurring, did not destroy property and did not encourage violence or destruction of property. Andrew also did not enter any sensitive areas.

Based on these reasons and the reasons discussed below, a probationary sentence is appropriate.

### BACKGROUND

Andrew entered a guilty plea to one count of Parading, Demonstrating, or Picketing in a Capitol Building, in violation of 40 USC §5104(e)(2)(G) for his

1

participation in the events on January 6, 2021. Andrew will appear for sentencing on August 4, 2022. He has reviewed the Pre-Sentence Investigation Report and does not have any further objections to its contents.

## ARGUMENT

### I. Legal Standard

The Court is well aware that the Supreme Court's opinions in *Kimbrough v. United States*, 552 U.S. 84 (2007), and *Gall v. United States*, 552 U.S. 38 (2007), have dramatically altered the law of federal sentencing. Congress has required federal courts to impose the least amount of imprisonment necessary to accomplish the purposes of sentencing as set forth in 18 U.S.C. §3553(a). Those factors include (a) the nature and circumstances of the offense and history and characteristics of the defendant; (b) the kinds of sentences available; (c) the advisory guideline range; (d) the need to avoid unwanted sentencing disparities; (e) the need for restitution; and (f) the need for the sentence to reflect the following: the seriousness of the offense, promotion of respect for the law and just punishment for the offense, provision of adequate deterrence, protection of the public from future crimes and providing the defendant with needed educational and vocational training, medical care, or other correctional treatment. *See* 18 U.S.C. §3553(a).

### II. Imposing a Sentence of Probation is Sufficient, But Not Greater Than Necessary, to Comply with 18.U.S.C. §3553(a).

#### a. Mr. Cavanaugh's Personal History and Characteristics

Andrew was born in Scottsdale, Arizona and is the middle child of two other siblings. He grew up in a middle-class close-knit family who remains supportive.

2

Andrew obtained his GED in 2002 specifically so that he could enroll in the U.S. Marine Corps in 2003. After the tragic terrorist attack on 9/11, Andrew felt compelled to join the military. He served his country for 8 years and was a squad leader in Iraq. He still suffers from Post-Traumatic Stress Syndrome (PTSD) because of the trauma he experiences. While in Iraq, he was in active combat and lost 26 marines of his squad to bomb, rocket, and sniper attacks. Andrew was honorably discharged in 2011 due to his PTSD and received many awards during his service. *See* PSR Par. 51.

When Andrew returned home from the military, he moved to Nevada and then to California for a job opportunity and that is where he met his wife. Andrew and his wife re-located to Montana after a few years and has lived there ever since. Together, they have three young daughters with one on the way as his wife is now 8 months pregnant. He recently completed a bachelor's degree in business and owned his own company from 2020-2021. Unfortunately, his business closed after the instant offense because he was unable to obtain clients. After this happened, he opened up another company with his wife, called Maintain Montana, which is a construction business that does maintenance for property management companies and some building work.

On January 6, 2021, Andrew traveled to Washington, D.C. to attend the rally. He had no prior intent to enter the Capitol building.

    **b.  Nature and Circumstances of the Offense**

Andrew accepted responsibility for this offense and is the one who told the FBI a detailed account of his actions after his arrest. At this time, he did not have a lawyer, yet he chose to give a full account of his actions that day. Despite this, the government attempts to undermine his acceptance of responsibility by providing a cherry-picked summary of certain phrases Andrew said during his hour and half recorded interview. *See* Gov't Sent Memo at 11-13. In its opinion, Andrew "claimed to have done nothing wrong," and "blamed the violence on errors made by Capitol police," as well as Antifa. *Id*. at 13. However, when listening to the audio recording, the government clearly takes his statements out of context and conveniently leaves other statements out, including that he "regrets going to the Capitol," and that he believed "the protests should have remained outside." Also in this interview, Andrew explained to the FBI that he did see people in full combat gear agitating in the front and did not clearly specify that these individuals must have been Antifa. He further explained that most of the Trump supports were further back but never placed the full blame on other groups. Andrew also did not blame the violence on Capitol police, he merely pointed out his observations that there were some errors he noticed based on his experience. He also told FBI that he encouraged the crowd not to escalate and helped treat some injuries while outside. Lastly, he explained that while he was inside the building, he felt that he was in over his head and did not want to be alone. He explained the place was massive and was trying to make his way out of the building after hoping to find his friend.

The fact remains that while in the Capitol, Andrew did not have any confrontation with law enforcement, did not destroy anything, and did not encourage violence of any kind.[1] This conduct was so completely out of Andrew's good character that he has exhibited for the past 37 years. After January 6, 2021, he has distanced himself completely from the events and has been focusing on supporting his family. His friends and family describe his good character and service to his country in the many character letters submitted to the court. *See* Exhibit 1, Letters of Support.

The government is wrong that Andrew has not demonstrated sincere remorse. It bases this opinion on an interview given without a lawyer present that as stated above, does not accurately describe the full nature of his statements. Regardless of this one interview, Andrew has shown remorse in many other ways since January 6, 2021. He has completely detached himself from the event and has not made excuses for his actions on social media. He has also literally accepted responsibility by entering a guilty plea and admitting his conduct to the Court and

---

[1] The government, in its sentencing memorandum, has suggested that lack of violence and destruction of property is not a mitigating factor in misdemeanor cases because, had this conduct been present, they would be charged with felony offenses. *See* Gov. Memo at 15-16. However, this distinction is important because there have been misdemeanor cases where defendants did display assaultive and/or aggressive behavior. *See United States v. Bradley Rukstales*, 21-CR-041 (CJN) (defendant sentenced to 30 days' incarceration after government alleged he threw a chair in the direction of police officers who had been forced to retreat and was ultimately dragged out of building after resisting their efforts); *United States v. Jacob Wiedrich*, 21-CR-581 (TFH) (two months' home detention imposed as defendant was young, did well on pre-trial supervision, and had no criminal history but shouted at police while entering building); *United States v. Jordan Stotts*, 21-CR-272 (TJK) (court imposed two months' home detention despite Stotts allegedly shouting at police and scaling wall to gain access to Capitol).

to probation. Andrew will also stand before the Court at sentencing and express his remorse.

### c. The Need to Promote Respect for the Law, Provide Just Punishment, Protect the Community and Provide Adequate Deterrence, and the Need to Avoid Unwanted Sentencing Disparities

Mr. Cavanaugh's request for a probationary sentence acknowledges the need to promote respect for the law and provide just punishment. Andrew has now been on supervision for over a year and has been in full compliance with his conditions. He has also been adequately deterred from any future conduct and his likelihood to reoffend is almost non-existent given his background and history, compliance on supervision, and his family support. United States Probation also agrees that a sentence of probation is appropriate. *See* ECF No. 32.

Furthermore, a sentence of probation is in line with similar past sentences imposed and the government's excessive recommendation would create an unwarranted sentencing disparity. For example, in *United States v. Zachary Wilson*, 1:21-CR-578 (APM), the Court imposed a sentence of 24 months' probation with 45 days' home confinement as a special condition of probation. In that case, the government accused Mr. Wilson of entering Nancy Pelosi's office, posting videos of his actions to Facebook, and not being truthful to the FBI about his involvement. Mr. Wilson also accepted responsibility early, did not pre-plan his activities, and did not participate in aggression or destruction while at the Capitol building. The government's allegations in *Wilson* involve more serious allegations than the

instant offense, yet the Court did not believe jail time was warranted when assessing the totality of the 3553(a) factors.

Similarly, in *United States v. Mark Rebegila*, 1:21-cr-283 (APM), the Court imposed a sentence of 24 months' probation with 30 days' home detention as a special condition. In that case, the government's recommendation of 60 days was also excessive. The government accused Mr. Rebegila of entering two sensitive areas, bragging about his conduct to friends, and later deleting evidence. Mr. Rebegila was also a father of four children, was a business owner, and maintained compliance with pre-trial supervision. After assessing all of the 3553(a) factors, the Court did not find incarceration to be appropriate.

Although there are no two cases alike, this case is more like *United States v. Kari Kelley*, 1:21-cr-201 (DLF), where the defendant was sentenced to 36 months' probation. Ms. Kelley was accused of entering the Capitol building through the same location as Mr. Cavanaugh and also felt overwhelmed while inside. She made her way out after 16 minutes. The government also accused Ms. Kelley of downplaying her conduct to the FBI, however she did express sincere remorse and accepted full responsibility. Ms. Kelley was also a mother working hard to support her son.

Mr. Cavanaugh's case also shares similarities with *United States v. Anthony Mariotto*, 1:21-cr-094 (RBW), where the court also imposed 36 months' probation. In *Mariotto*, the government accused the defendant of entering through the same location while raising his fist in triumph around the same time as Mr. Cavanaugh

7

and remained in the building for about 20 minutes. Mr. Mariotto also cooperated with the FBI afterwards and complied with pre-trial supervision. Unlike Mr. Cavanaugh, however, the government accused Mr. Mariotto of filming assaults on police at the Capitol, proclaiming "Where are the traitors?" and "they are not going to stop us," and entering the Senate Gallery. Mr. Mariotto was also a husband and father with no criminal history who works hard to support his family.

Furthermore, the cases that the government provide in support of its recommendation further support the defense recommendation. *See* Gov't Memo at 23-24. First, in *United States v. Abram Markofski*, 1:21-cr-344 (JDB), the court rejected the government's request for incarceration and imposed a sentence of 24 months' probation. Despite that, the government argues that Mr. Cavanaugh should have known better because of his prior military experience. That assertion is just simply not enough to warrant a sentence different than Markofski, especially when considering that Markofski allegedly spent 80 minutes in the Capitol building. Mr. Cavanaugh's prior military experience led him to caution people not to escalate the situation and he did not use his prior experience to gain any advantage on January 6, 2021. In fact, the Honorable Chief Judge Beryl Howell specifically rejected the government's attempt to turn military service into an aggravating factor for sentencing in *United States v. Leonard Gruppo*, 1:21-cr-391 (BAH). The court explained, "I don't view his military service that way. I just can't bring myself

to do that" and explained her shock at the Justice Department's position saying she believed most would have "enormous respect" for Gruppo's service.[2]

Similarly, the government provides *United States v. Thomas Vinson*, 1:21-cr-355 (RBW), where the court sentenced the defendant to 60 months' probation and not jail time. Mr. Vinson was also alleged to have entered the Senate Wing Door around the same time and stayed in the building for approximately a half hour. Unlike Mr. Cavanaugh, however, the government accused Mr. Vinson of recording his activities and was at the front of a crowd pushing past officers. The government again pointed out his service in the U.S. Air Force. Again, that comparison does not demonstrate why a jail sentence is appropriate here.

Lastly, general and specific deterrence has also been served. Mr. Cavanaugh lost his business that he was very passionate about as a result of his actions. He has already been on pre-trial supervision for a lengthy period of time and his reputation in the community has undoubtedly been negatively affected. General deterrence has also been served as the whole world has already seen the collateral consequences that have damaged the lives and reputations of misdemeanants with the same charge.

### III.  <u>A Period of Incarceration Followed by a Period of Probation is Impermissible</u>

The government continues to request illegal split sentences, insisting that there are now other courts in this jurisdiction who have agreed that these types of

---

[2] Feds seek tougher sentences for veterans who stormed Capitol | AP News

sentences are permissible.[3] One of these illegal sentences is now pending appeal before the D.C. Circuit. *See United States v. Little*, 22-3018 (originating docket No. 21-cr-315 (RCL)). In *United States v. Madden*, 21-cr-55 (EGS), the Honorable Emmet G. Sullivan requested that the defense provide briefing explaining why it believes the district court in *Little* erred in imposing a split sentence. The defense submitted a supplemental brief addressing the court's question. Mr. Cavanaugh adopts all of the arguments contained in that brief, attached here as Exhibit 2. For all of the reasons stated in *Madden*, the court is not permitted to impose a split sentence as doing would raise significant constitutional concerns. Furthermore, the plea agreement nowhere indicates or notifies Mr. Cavanaugh that he may be subject to both 6 months' incarceration and 5 years' probation. A correct reading of the relevant statutes and the legislative history, as discussed in the defense pleadings in *Madden*, make it clear that a district court has a dichotomous choice: it can either sentence the defendant to imprisonment up to six months, or it can sentence the defendant to probation for up to five years. Where, as here, there is

---

[3] Most judges in this district confronted with the government's request for a split sentence for one single petty offense conviction have declined to impose such a sentence. *See United States v. Spencer*, 21-CR-147 (CKK) (amending sentence after briefing provided), ECF No. 70; *United States v. Torrens*, No. 21-cr-204 (BAH), ECF No. 110 & 125); *United States v. Kari Kelley*, 21-CR-201 (DLF) (At sentencing on March 17, 2022, Judge Friedrich rejected the government's contention that a split sentence could be imposed even after being provided notice of the *Little* decision); *United States v. Jacob Wiedrich*, 21-CR-581 (TFH) (Judge Hogan also rejecting government's proposal for split sentence); *United States v. Vic Williams*, 21-CR-388 (RC) (court did not impose split sentence despite government's recommendation of split sentence); *United States v. Zachary Wilson*, 21-CR-578 (APM) (same); *United States v. Traci Sunstrum*, 21-CR-652 (CRC) (same); *United States v. Michael Carico*, 21-CR-696 (TJK) (same); *United States v. Tanner Sells*, 21-CR-549 (ABJ) (same).

solely one single petty offense, the statute precludes a combined probationary and a sentence of incarceration.

## **CONCLUSION**

For the reasons stated above, Mr. Cavanaugh respectfully requests that the Court impose a period of probation and to reject the government's recommendations.

Respectfully submitted,

A.J. KRAMER
FEDERAL PUBLIC DEFENDER

_____/s/_____
Maria N. Jacob
Assistant Federal Public Defender
625 Indiana Ave. NW, Ste. 550
Washington, D.C. 20004
(202) 208-7500
Maria_jacob@fd.org